**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **SYLVIA SALAS,** | |
| Plaintiff, | No. 08 CV 1614 |
| v. | Judge  Blanche M. Manning |
| **3M COMPANY and SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.,** | Magistrate Judge  Susan E. Cox |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENAS
SEEKING DOCUMENTS, MOTION FOR PROTECTIVE ORDER AND MOTION FOR
SANCTIONS**

## I.    INTRODUCTION

The arguments contained in Plaintiff's Motion to Quash Subpoenas Seeking Documents, Motion for Protective Order and Motion for Sanctions (collectively, the "Motion") are twofold. First, Plaintiff Sylvia Salas ("Plaintiff") contends that Defendants 3M Company and Sedgwick Claims Management Services, Inc. (collectively, "Defendants") failed to give proper notice of the subpoenas that they issued.  Second, Plaintiff contends that the subpoena issued to her current employer is "harassing."  Neither of these arguments, however, have any merit.

Indeed, Defendants fully complied with the "prior notice" requirements of Federal Rule of Civil Procedure 45(b)(1) ("Rule 45(b)(1)").  As demonstrated below, "prior notice" is consistently interpreted to mean notice provided contemporaneously with the issuance of the subpoena.  At a minimum, Defendants provided contemporaneous notice and, as such, Plaintiff's first argument is simply unavailing.

The only other argument articulated in Plaintiff's Motion is that the subpoena issued to

her current employer is "harassing," and, therefore, must be quashed. Plaintiff, however, has failed to demonstrate how this subpoena is at all harassing. She merely claims that her current employer, because of the subpoena, will likely find her to be a "troublemaker" and will then likely terminate her employment. To call this a "leap" would be a severe understatement.

Neither Plaintiff nor Defendants can predict how Plaintiff's current employer will react to receiving the subpoena. Quite frankly, though, the reaction of Plaintiff's current employer— whether good, bad, or indifferent—should not dictate how Defendants conduct discovery in this case. Indeed, the question before the Court is whether the subpoena to Plaintiff's current employer seeks information relevant to the claims and defenses in this case. Defendants respectfully submit that it does.

For these reasons, as discussed fully below, Plaintiff's Motion must be denied in its entirety.

## II.   ARGUMENT

### A.   Plaintiff Was Given Proper Notice of the Subpoenas At Issue.

Rule 45(b)(1) requires prior notice of any demand for production of documents to be served upon each party. "Prior notice" is consistently interpreted to mean notice provided contemporaneously with the issuance of the subpoena. *See Mann v. Univ. of Cincinnati*, 1997 U.S. App. LEXIS 12482 *18 (6th Cir. May 27, 1997)[1]; *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 412 (S.D.N.Y. 2000); *Phalp v. City of Overland Park*, 2002 U.S. Dist. LEXIS 9684 *8 (D. Kan. May 8, 2002).

Indeed, the purpose of "prior notice" is to afford the other parties the opportunity to object to the production or inspection of the documents prior to production, or to serve a demand for additional documents or things, and to obtain the materials at the same time as the party who

---

[1]  All unreported cases are attached as <u>Exhibit A</u>.

served the subpoena.  *Butler v. Biocore Medical Tech., Inc.*, 348 F.3d 1163, 1173 (10th Cir. 2003).

In her Motion, Plaintiff states that "notice [of the issuance of the subpoenas] was, at best, provided contemporaneously [with the service of the subpoenas]."  Motion, at p. 5.  Even accepting this characterization as true, for purposes of this Motion, this Court should find that Defendants provided proper "prior notice" in accordance with the cases cited above.

As the Tenth Circuit in *Butler* accurately noted, the spirit of Rule 45(b)(1) is to give the opposing party the opportunity to object to the subpoena in a timely fashion.  Here, Plaintiff did precisely that by corresponding with Defendants' counsel and by filing the Motion now before this Court.  The purpose of Rule 45(b)(1)'s notice requirement has been carried out.

In her Motion, Plaintiff cites to *Woods v. Fresenius Med. Care Group of North America*, 2008 WL 151836 (S.D. Ind. Jan. 16, 2008) in an effort to show that contemporaneous notice is insufficient under Rule 45(b)(1).  Plaintiff's reliance on *Woods*, however, is entirely misplaced. *Woods* merely stands for the proposition that notice of the subpoena must be given prior to the return date listed in the subpoena.  It does not in any way stand for the proposition that contemporaneous notice is insufficient under Rule 45(b)(1).

For these reasons, Defendants have satisfied the notice requirements of Rule 45(b)(1).

**B.     The Subpoena to Plaintiff's Current Employer Seeks Information Relevant to the Claims and Defenses in this Case.** [2]

Despite Plaintiff's attempt to dress the subpoena to her current employer in sinister clothing, the subpoena seeks to procure information relevant to the claims and defenses in this case.  For instance, documents from Plaintiff's current employer are likely to show whether Plaintiff identified both 3M and Sedgwick as her prior employers, just 3M, or just Sedgwick.  In

---

[2] Other than alleged improper notice, Plaintiff does not challenge the subpoenas issued to the past and current employers of her daughter.

her Complaint, Plaintiff identified both 3M and Sedgwick as her "employers" under the FMLA. Defendants should not be precluded from finding out who Plaintiff has actually identified to others as her prior employer.

The documents from Plaintiff's current employer are also likely to show Plaintiff's stated reason for being terminated from 3M. The thrust of Plaintiff's Complaint is that Defendants unlawfully terminated her for her utilization of FMLA leave. Defendants should be able to discover how Plaintiff described her termination from 3M to others.

In her Second Amended Initial Disclosures, Plaintiff also alleged that she has suffered, and is still suffering, from emotional distress as a result of her termination from 3M. Defendants should be able to discover what notes or records, if any, that her current employer possesses that relate to how she appeared or acted at the time of her interview or at any point during her still ongoing employment, and whether she is exhibiting distress in the workplace.

Moreover, these documents should also shed light on the issue of mitigation of damages. Mitigation relates to Plaintiff's backpay and front pay claims, which she has alleged in this case.

For these reasons, the subpoena to Plaintiff's current employer seeks relevant information pertaining to the claims and defenses in this case. In *Graham v. Casey General Stores*, 206 F.R.D. 251 (S. D. Ind. 2002), a case cited in Plaintiff's own Motion, "[t]he party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." *Id.* at 254. "To meet this burden, the objecting party must specifically detail the reasons why each request is *irrelevant*." *Id.* (emphasis added). This, Plaintiff simply cannot do.[3]

In her Motion, Plaintiff cites to *Graham* claiming that it stands for the blanket proposition that a subpoena to a current employer must be quashed. Motion, at p. 6. Plaintiff's reference to

---

[3] Federal Civil Rule 26(b) provides that "parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . ."

*Graham* is inaccurate, at best, and disingenuous, at worst. *Graham* specifically dealt with a subpoena seeking medical information from the current employer even though the plaintiff had specifically provided executed releases for her medical records. The court thus found that the defendant could have obtained the medical records by serving the signed releases (and of course a subpoena) on the medical providers and had no need to take the more intrusive step of seeking this medical information from plaintiff's current employer. *Graham* is clearly inapposite.

The case truly instructive on this point in the Northern District of Illinois is *Rhodes v. Sun Electric Corp.*, 1985 WL 2867 (N.D. Ill. Sep. 24, 1985). In *Rhodes*, the Northern District of Illinois denied the plaintiff's motion for protective order and, in doing so, permitted the defendant to obtain information from the plaintiff's current employer. In reaching this conclusion, the Northern District of Illinois stated:

> For example, plaintiff claims her termination was because of her sex. Defendants are entitled to know whether she ascribed other reasons for leaving [the defendants' employ] when and if she discussed that matter with her present employer. She claims extreme distress. Defendants are entitled to know how she appeared to her present employer when she approached it for employment.

Like the plaintiff in *Rhodes*, Plaintiff here claims that she was unlawfully terminated. And like the plaintiff in *Rhodes*, Plaintiff here claims that she was or is suffering from emotional distress. As the Northern District of Illinois in *Rhodes* recognized, Defendants should not be precluded from procuring discovery on these very matters.

As noted above, mitigation is also an issue in this case. In *Equal Employment Opportunity Commission v. Kim & Ted, Inc.*, 1995 WL 591451 (Oct. 3, 1995 N.D. Ill. 1995), the Northern District of Illinois denied the plaintiff's motion to quash subpoenas and explicitly held that "[t]ax information and personnel documents from employers for whom class members have

worked subsequent to working for defendants are relevant and may lead to admissible evidence concerning mitigation." *Id.* at *3.  In accordance with *Kim & Ted*, this Court should likewise deny Plaintiff's Motion.

As demonstrated above, the subpoena to Plaintiff's current employer seeks relevant, and potentially significant, information in this case.  Plaintiff contends that Defendants are compelled to obtain, or at least try to obtain, this information through Plaintiff herself.  There is no such requirement.  In any event, much of the documentation sought through the subpoena is documentation that should not be in the possession of Plaintiff (*e.g.*, employment application, notes of her interview, performance reviews, etc.).  And to the extent Plaintiff "has" this documentation, Defendants should not be compelled to believe that such documentation in the possession of Plaintiff is authentic.

## III.    CONCLUSION

For the foregoing reasons, Defendants request that Plaintiff's Motion be denied in its entirety.  Plaintiff's request for sanctions must be denied accordingly.[4]

Respectfully submitted,
3M COMPANY

s/Veronica Li
Veronica Li

John A. Ybarra (#06196983)
Veronica  Li (#6286719)
LITTLER MENDELSON
A Professional Corporation
200 N. LaSalle Street
Suite 2900
Chicago, IL  60601

---

[4] Plaintiff cites the Southern District of New York case, *Conrod v. Bank of New York*, 1998 WL 430546 (S.D.N.Y. 1998), for the blanket proposition that a subpoena to a plaintiff's current employer is harassing and warrants sanctions.  As demonstrated by *Rhodes*, *supra*, the Northern District of Illinois clearly does not take this position.  In fact, *Conrod* is entirely distinguishable from the present case as the defendant in *Conrod* was sanctioned only after it served a subpoena without notice and only after it violated the Court's clear directives.

312.372.5520

Dated: August 27, 2008

## <u>CERTIFICATE OF SERVICE</u>

I, Veronica Li, certify that on August 27, 2008, a copy of the foregoing ***Defendants' Opposition To Plaintiff's Motion To Quash Subpoenas Seeking Documents, Motion For Protective Order And Motion For Sanctions*** was filed electronically.  Notice of this filing will be sent to the following party by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Kristin M. Case
The Case Law Firm, LLC
150 North Michigan Avenue
Suite 2700
Chicago, IL 60601


s/Veronica Li
Veronica Li

# EXHIBIT A

LEXSEE



Positive
As of: Aug 27, 2008

LISA MANN, Appellant/Cross-Appellee, v. UNIVERSITY OF CINCINNATI,
ROBERT A. MONAST, and JON D. CLEMENS, Appellees, UNIVERSITY OF
CINCINNATI and TAFT, STETTINIUS & HOLLISTER, Cross-Appellants.

Nos. 95-3195; 95-3292

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

1997 U.S. App. LEXIS 12482

May 27, 1997, FILED

**NOTICE:**     [*1] NOT RECOMMENDED FOR
FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE
24 LIMITS CITATION TO SPECIFIC SITUATIONS.
PLEASE SEE RULE 24 BEFORE CITING IN A PRO-
CEEDING IN A COURT IN THE SIXTH CIRCUIT. IF
CITED, A COPY MUST BE SERVED ON OTHER
PARTIES AND THE COURT. THIS NOTICE IS TO
BE PROMINENTLY DISPLAYED IF THIS DECISION
IS REPRODUCED.

**SUBSEQUENT HISTORY:**     Reported in Table Case
Format at: 114 F.3d 1188, 1997 U.S. App. LEXIS 19625.

**PRIOR HISTORY:**     ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO. 92-00852. Spiegel.
1/23/95.

**DISPOSITION:**   AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant student filed an
action alleging sexual harassment against appellees, uni-
versity and teachers. The United States District Court for
the Southern District of Ohio entered a jury verdict for
the college and teachers and imposed sanctions against
cross-appellant university's counsel. The student filed a
motion for a new trial, which the district court denied.
The student and the university's counsel appealed.

**OVERVIEW:** The student claimed that the district court
should have ordered a new trial on the ground that the
verdict was against the weight of the evidence, and that
the district court abused its discretion in various rulings.
The university's counsel contended the sanctions were
improper and that the district court did not have authority
to issue them. On appeal, the court affirmed. The record
revealed that the jury had a sufficient basis to believe
either the student or the teachers. The district court did
not abuse its discretion when it denied the new trial. The
university's counsel knew that the student wished to as-
sert a privilege over her medical records, and therefore
should have known that she had standing to challenge the
subpoena, regardless of her ultimate success. The univer-
sity's counsel created the false impression that she was
complying with the discovery schedule set up by Fed. R.
Civ. P. 45, but then subverted that procedural scheme.
The findings were more than "tantamount" to a finding
of bad faith on the part of the university's counsel, they
were explicit findings of bad faith, for which the district
court had authority to impose monetary sanctions.

**OUTCOME:** The court affirmed the verdict in favor of
the teachers, the denial of the student's motion for a new
trial, and the sanctions imposed on the university's coun-
sel.

**CORE TERMS:** subpoena, defense counsel, medical
records, bad faith, custodian, notice, physician-patient,
sanctioned, discovery, opposing counsel, protective or-
der, telephone conference, peremptory, viewing, grade,
new trial, ex parte, subpoenaed, patient, issuing, copied,
federal common law, sexual relationship, outside coun-

Page 1

sel, right to privacy, right of privacy, privacy right, opportunity to object, inherent authority, bad faith

**LexisNexis(R) Headnotes**

*Civil Procedure > Judgments > Relief From Judgment > Motions for New Trials*
*Civil Procedure > Appeals > Standards of Review > General Overview*
*Evidence > Procedural Considerations > Weight & Sufficiency*
[HN1]The appellate court accords great deference to a district court's denial of a motion for a new trial asserting that the verdict was against the great weight of the evidence. A trial court should not set aside the verdict unless it is against the clear weight of the evidence. In other words, it should deny the motion if the verdict that has been reached is reasonable. A verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable.

*Criminal Law & Procedure > Juries & Jurors > Peremptory Challenges > Appellate Review*
*Criminal Law & Procedure > Juries & Jurors > Peremptory Challenges > Number*
*Criminal Law & Procedure > Appeals > Standards of Review > Abuse of Discretion > General Overview*
[HN2]A district court's decision to allow defendants to share six peremptory challenges while giving plaintiff only four is well within its discretion. 28 U.S.C.S. § 1870; Fed. R. Civ. P. 47(b).

*Evidence > Testimony > Experts > General Overview*
[HN3]Under Fed. R. Evid. 703, experts may consider any information of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.

*Civil Procedure > Federal & State Interrelationships > Federal Common Law > General Overview*
*Evidence > Privileges > Doctor-Patient Privilege > General Overview*
*Healthcare Law > Business Administration & Organization > General Overview*
[HN4]Federal courts do not recognize a federal physician-patient privilege.

*Civil Procedure > Discovery > Protective Orders*

*Evidence > Privileges > Doctor-Patient Privilege > General Overview*
*Healthcare Law > Business Administration & Organization > Patient Confidentiality > General Overview*
[HN5]When a colorable claim is asserted, it is the court which must resolve the issue not the attorney seeking discovery.

*Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN6]Courts have inherent authority to impose sanctions on a party and attorney for bad faith conduct during the course of litigation. The appellate court reviews a district court's award of sanctions for abuse of discretion. Before any such sanction may issue, the trial court must find that the conduct at issue constituted or was tantamount to bad faith. A "mistake" would not meet the requirements for sanctions.

**COUNSEL:** LISA MANN (95-3195), Pro se, Cincinnati, OH.

For UNIVERSITY OF CINCINNATI (95-3195): Frank H. Stewart, R. Joseph Parker, Doreen Canton, Caleb E. Nelson, Taft, Stettinius & Hollister, Cincinnati, OH.

For ROBERT A. MONAST (95-3195): Frank H. Stewart, (See above), R. Joseph Parker, (See above), Doreen Canton, (See above), Caleb E. Nelson, (See above). For JON D. CLEMENS (95-3195): Frank H. Stewart, (See above), R. Joseph Parker, (See above), Doreen Canton, (See above), Caleb E. Nelson, (See above).

LISA MANN (95-3292), Pro se, Cincinnati, OH.

For UNIVERSITY OF CINCINNATI (95-3292): R. Joseph Parker, Doreen Canton, Caleb E. Nelson, Taft, Stettinius & Hollister, Cincinnati, OH.

For ROBERT A. MONAST (95-3292): Caleb [*2] E. Nelson, (See above). For JON D. CLEMENS (95-3292): Caleb E. Nelson, (See above).

For TAFT, STETTINIUS & HOLLISTER (95-3292): R. Joseph Parker, (See above), Doreen Canton, (See above).

**JUDGES:** BEFORE: SUHRHEINRICH, SILER, and DAUGHTREY, Circuit Judges. SILER, Circuit Judge, concurring in part and dissenting in part.

**OPINION**

**PER CURIAM.** Plaintiff Lisa Mann, pro se on appeal, appeals the district court's entry of final judgment following a jury verdict for defendants on her claim of sexual harassment against the University of Cincinnati and two teaching assistants. The University and its outside counsel, the Taft law firm, cross-appeal the district court's imposition of sanctions against them.

## I. Appeal

### A. Facts

Mann was an undergraduate student at the University of Cincinnati in the College Conservatory of Music between 1985 and 1991. On October 29, 1992, she sued under 42 U.S.C. § 1983 and 20 U.S.C. § 1681(a), alleging that two of her former teaching instructors, graduate students Robert Monast and Jon Clemens, had sexually harassed her and then penalized her academically, in violation of her Fourteenth Amendment right to equal protection. She claimed that defendant [*3] University of Cincinnati failed to correct these improprieties, in violation of § 1983. Plaintiff also asserted that she was denied a right to education at the University in violation of 20 U.S.C. § 1681.

Plaintiff alleged that Monast suggested that they have a sexual relationship, and then verbally abused her after she declined. Plaintiff further claimed that after she terminated the student-instructor relationship, he failed to give her a grade. Clemens also allegedly suggested that she sleep with him and then gave her a poor grade in the course because she refused. Finally, plaintiff alleged that university officials did nothing about the incidents, after she complained to them.

Plaintiff sought compensatory and punitive damages. A jury found for defendants. After the district court entered final judgment dismissing Mann's suit, she moved for a new trial. The district court denied it. This appeal follows.

### B. Discussion

Plaintiff claims that: (1) the district court should have ordered a new trial on the ground that the verdict was against the weight of the evidence, and (2) that the district court abused its discretion in various rulings.

#### 1. Weight of Evidence

[*4] [HN1]We accord great deference to a district court's denial of a motion for a new trial asserting that the verdict was against the great weight of the evidence. J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co., 936 F.2d 1474, 1487 (6th Cir. 1991). A trial court should not set aside the verdict unless it is against the clear weight of the evidence. Id. In other words, it should deny the

motion if the verdict that has been reached is reasonable. Id. A verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable. Id.

#### a. Monast

Plaintiff's account of events differs drastically from both Monast's and Clemens' testimony. The jury was free to credit their testimony over hers, as it obviously did. Further, the jury could have reasonably concluded that Monast's conduct was not sexual or discriminatory, because the record showed that he was also verbally abusive with other students. As for the "Incomplete" grade he gave her, Monast testified that not only had she refused to complete the class, but she had not completed enough assignments to warrant a grade. Moreover, he offered plaintiff [*5] several alternatives for completing the course, but she did not pursue any of them. Finally, Monast denied making any late-night phone calls to plaintiff. The jury obviously believed him.

#### b. Clemens

Clemens admitted asking Mann if she wanted to have a sexual relationship with him. Clemens explained he was concerned that plaintiff's desire for a sexual relationship might be interfering with her school performance. Moreover, Clemens testified to plaintiff's remarks indicating that plaintiff was interested in him. Plaintiff testified that Clemens, in cahoots with Monast, mocked and embarrassed her. Again, the record reveals that the jury had a sufficient basis to believe either plaintiff or Clemens. It obviously concluded that Clemens had not created a "discriminatorily abusive . . . environment." Cf. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993). Moreover, Clemens explained the low grade he gave her on an assignment and for the semester. In short, the jury had ample ground for concluding that plaintiff failed to prove sexual harassment. The district court did not err in denying the motion for a new trial.

#### 2. Other Rulings

#### a. [*6] Disqualification Motion

The magistrate judge found that when plaintiff filed her belated motion to disqualify, defendants would have been prejudiced by having to switch counsel because outside counsel had already performed considerable work on the case. We give wide latitude to such decisions. United States v. Mays, 69 F.3d 116, 121 (6th Cir. 1995), cert. denied, 135 L. Ed. 2d 194, 116 S. Ct. 2504 (1996). In any event, plaintiff failed to preserve that objection for appeal.

#### b. Peremptories

The [HN2]district court's decision to allow defendants to share six peremptory challenges while giving plaintiff only four was well within its discretion. 28 U.S.C. § 1870; Fed. R. Civ. P. 47(b). Clemens and Monast were differently situated. The jury could have found for one or both, while exonerating the University. See Goldstein v. Kelleher, 728 F.2d 32, 37 (1st Cir. 1984)(holding that district court did not abuse discretion by giving extra peremptory challenges to defendants who "have even colorably different interests"). Any error would be harmless anyway, because defendants actually used only one of their peremptory challenges. That is three less than plaintiff, and she did [*7] not use all four of her peremptories. See Mills v. GAF Corp., 20 F.3d 678, 679 n.2 (6th Cir. 1994).

### c. For Cause Dismissal

The district court was not required to dismiss for cause the juror who was on the same board of directors as one of Taft's tax lawyers. Cf. Cox v. Treadway, 75 F.3d 230, 239 (6th Cir.), (district court's refusal to dismiss venireperson who was related to two DEA agents was not error), cert. denied, 136 L. Ed. 2d 37, 117 S. Ct. 78 (1996). In any event, plaintiff did not move to strike this venireperson for cause and therefore forfeited the issue. Marks v. Shell Oil Co., 895 F.2d 1128, 1129 (6th Cir. 1990).

### d. Evidentiary Rulings

The district court did not err in preventing plaintiff from learning that defense counsel had inspected her medical records since plaintiff was not seeking additional relief for invasion of privacy or deprivation of her constitutional right to privacy. In fact, it does not appear from the record that the court explicitly barred her from doing so. Nor did the court err in not preventing defendants' psychological expert from testifying simply because she had earned her degrees at the University of Cincinnati, [*8] a fact which goes to her credibility. The expert's review of a newspaper article discussing stalking charges Mann filed against another woman was of the type of information allowed by [HN3]Fed. R. Evid. 703 (experts may consider any information "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. . . . "). Finally, we hold that the district court did not err in allowing defendants to introduce plaintiff's employment history, that she lived with her grandparents rather than her mother, testimony regarding the fire and the car wreck. United States v. Hawkins, 969 F.2d 169, 174 (6th Cir. 1992).

## II. Cross-Appeal

### A. Facts

Defendants and their outside counsel, the Taft law firm, were sanctioned for their conduct in reviewing plaintiff's medical records on file at the University Health Services. [1] The magistrate judge held that the University and defense counsel violated plaintiff's constitutional right of privacy, plaintiff's physician-patient privilege, and both the spirit and letter of Fed. R. Civ. P. 45, by voluntarily producing and examining subpoenaed documents before the date specified in the subpoena for [*9] compulsory production. See 824 F. Supp. at 1195-1203. The magistrate judge prohibited defendants and their counsel "from examining subpoenaed records prior to the return date of the subpoena," and further required them to "provide at least fourteen days notice to opposing counsel on all future subpoenas, absent exigent circumstances." He also barred defendants from using either Dr. Kindel's file or the Student Health Services' file (with the exception of a one-page report by Dr. Hani Abdulla) for any purpose. 824 F. Supp. at 1206. The magistrate judge ordered the University and Taft to pay jointly $ 2,500 plus costs to plaintiff for violation of her rights.

> 1 - The district court adopted the factual findings of the magistrate judge, after a hearing on plaintiff's motion for a protective order and for sanctions. See Mann v. University of Cincinnati, 152 F.R.D. 119 (S.D. Ohio 1993)(district court opinion; quoting 824 F. Supp. 1190, 1192-95 (S.D. Ohio 1993)(magistrate judge's opinion)). They are lengthy; we therefore incorporate them by reference here.

[*10] The district court upheld the magistrate's analysis regarding plaintiff's right to privacy and Rule 45. 152 F.R.D. at 127; see also 152 F.R.D. at 120 n.1 (disagreeing with his treatment of physician-patient privilege). The court also adopted the sanctions imposed.

On appeal, defendants maintain that all three of the magistrate judge's rulings are wrong. They also question the court's authority to sanction.

### B. Discussion

#### 1. Constitutional Privacy Right

The lower courts held that the medical records at issue were of such a private and personal nature that plaintiff enjoyed constitutional protection. This Court has consistently rejected such constitutional claims, however. See J.P. v. DeSanti, 653 F.2d 1080, 1090 (6th Cir. 1981)(concluding that "the Constitution does not encompass a general right to nondisclosure of private information"; juveniles had no privacy right in their social histories prepared by state probation authorities); Doe v. Wigginton, 21 F.3d 733, 740 (6th Cir. 1994)(rejecting

inmate's claim that his constitutional right to privacy was violated by the disclosure of his HIV infection to a corrections officer; citing DeSanti); Jarvis v. Wellman, [*11] 52 F.3d 125, 126 (6th Cir. 1995)(holding that unauthorized release of rape victim's medical records did not rise to level of breach of right recognized as "fundamental" under Constitution; following DeSanti and Wigginton). The imposition of sanctions cannot be based upon this basis.

## 2. Physician-Patient Privilege

Although the district court rejected the magistrate judge's conclusion that the Sixth Circuit would recognize a physician-patient privilege, see 152 F.R.D. at 120 n. 1, we address the question for the sake of completeness. [2] In answering this question, we look to the federal common law of privilege. Fed. R. Evid. 501; Hancock v. Dodson, 958 F.2d 1367, 1372-73 (6th Cir. 1992).

> 2  In fact, the magistrate judge, "invited defendants to appeal this ruling so that the Sixth Circuit may speak with specificity regarding the constitutional privacy right and the doctor-patient privilege associated with medical records under the circumstances existing in this case." 824 F. Supp. at 1198.

[*12] The magistrate judge erred in concluding that the Sixth Circuit would recognize a doctor-patient privilege under federal common law. Contrary to the magistrate judge's opinion, Hancock expressly holds that [HN4]federal courts do not recognize a federal physician-patient privilege. Id. at 1373. See also Patterson v. Caterpillar, Inc., 70 F.3d 503, 506-07 (7th Cir. 1995)(same). Because no privilege exists in the federal courts, this likewise cannot be the peg on which to impose sanctions.

## 3. Rule 45

The magistrate judge held that although defendants' attorney and the University properly issued a Rule 45 subpoena, they improperly obtained the records and violated Rule 45. Defendants argue that under Rule 45 lawyers obviously cannot require the custodians of documents to produce those documents ahead of schedule, but that it does not bar the custodians from choosing to do so.

We need not decide today exactly how Rule 45 applies in every hypothetical case, [3] because in this case it cannot be disputed that the University and defendants' attorney knew that plaintiff wished to assert a privilege over her medical records, and therefore should have known that she had standing [*13] to challenge the subpoena, regardless of her ultimate success. See 9A

Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995)(noting that "ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought"). [4]

> 3  Read literally, Rule 45(a)(1)(C) seems to mean simply what it says: the person subpoenaed must produce the specified documents "at" the time and place specified, not before and not after. One could argue that use of the term "at" instead of "on or by" or "on or before" said date intends production at a precise moment in time, as opposed to a period of compliance up and until a certain date. As defendants point out, most of the time early production of the documents is not a problem, because the person subpoenaed is the only person with standing to contest the subpoena and he or she has no objections. However, because of the possibility of objections, which Rule 45 clearly contemplates, and accounts for, it would also appear that a set date is necessary to establish a time frame for filing those objections. Other parts of the rule confirm this interpretation: subsection (b)(1) requires that prior notice of any commanded production of documents and things or inspection of premises before trial "shall be served on each party in the manner prescribed by Rule 5(b)." See 5A James W. Moore, Moore's Federal Practice, P45.05[3] (1995)("This provision [(b)(1)], added in 1991, affords other parties the opportunity to object to the production or inspection, or to serve a subpoena requiring additional production at the same time and place." (citing Committee Note of 1991)).

[*14]

> 4  Although plaintiff does not have a substantive right in the physician-patient privilege under federal common law, she does under Ohio law. See Ohio Rev. Code § 2317.02(B)(1). Hospital records containing privileged communications are included within the privilege. State v. McKinnon, 38 Ohio App. 3d 28, 525 N.E.2d 821 (Ohio 1987). The privilege is, however, subject to exceptions, including the situation where patient turns litigant. See O.R.C. § 2317.02(B)(1)(a)(iii)(stating that the testimonial privilege does not apply "if a civil action . . . is filed by the patient"). However, even that waiver of privilege is limited. See § 2317.02(B)(3)(a)(providing that physician "may be compelled to testify or to submit to discovery under the Rules of Civil Procedure only as to a communication made to him by the patient in

question in that relation, or his advice to the patient in question, that related causally to historically to physical or mental injuries that are relevant to issues in the . . . civil action").

By seeking signed medical releases from plaintiff, defendants' attorney [*15] initially communicated her shared belief in plaintiff's putative right to assert a doctor-patient privilege. At some point however, defendants' attorney apparently decided that plaintiff had no privilege to assert and that there were no remaining impediments to defendants' viewing the medical records. The problem is that she failed to reveal this change of heart to plaintiff's counsel, so that plaintiff could develop other possible strategies for protecting the medical records. The deception began when defense counsel served a copy of the subpoena (which assumes that the documents are beyond the control of the requesting party) on plaintiff's counsel, but did not send along the ex parte letter served on the records custodian informing the custodian that she could turn the documents over early. This had the not unpredictable effect of depriving plaintiff of an opportunity to utilize the mechanism available in Rule 45 for objecting on grounds of privilege in clause (c)(2)(B)(iii). To top it off, defense counsel went and looked at the documents, not even waiting for early, voluntary, ex-parte compliance.

When plaintiff's counsel described the nature of the dispute to the magistrate judge [*16] during their telephone conference on plaintiff's motion for a protective order and to quash the subpoena, defendants' attorney made no mention of the fact that she had already reviewed the documents in question. Defendants' attorney remained silent when the magistrate judge ordered plaintiff to review the documents, produce those to which she had no objection, and turn over to the court for in camera review those to which she wanted protected, i.e. those that she did not want anyone else to see. Although defendants' attorney had stated in her responsive pleading that she had already viewed the documents (which the magistrate judge did not receive prior to the telephone conference), her silence at critical points in the telephone conference can only be characterized as material omissions. Defendants' deception went undiscovered until Mann went to the University Health Services and was informed by the records custodian that defense counsel had already seen and copied her medical records.

Under these circumstances, we agree that, at a minimum, defendants violated the spirit of Rule 45. This is true even though, as we have just held, plaintiff ultimately could not have prevented defendants [*17] from viewing the documents based on either a physician-patient privilege or constitutional right. As the magistrate judge put it: "Whether the privacy or privilege claim is valid is not the question. [HN5]When a colorable claim

is asserted, it is the court which must resolve the issue not the attorney seeking discovery." 824 F. Supp. at 1201. Here defendants' attorney created the false impression that she was complying with the discovery schedule set up by Rule 45, but then subverted that procedural scheme when she: (1) sent an ex parte letter seeking early compliance, (2) viewed and copied the records with no notice to plaintiff or her attorney, thereby depriving plaintiff of an opportunity to challenge the subpoena, and (3) remained strangely silent during the telephone conference called by the magistrate judge to establish procedures for protecting the documents. The discovery rules exist to facilitate the exchange of relevant information between litigants; they were not meant to be tools of deception. That is precisely how defendants' attorney used them here, and in the process, wasted the time of the court and the parties.

Given this conclusion, we need not address defendants' other [*18] objections to the lower court's rulings regarding Rule 45. [5]

> 5   Defendants also object to the magistrate judge's requirement that subpoenas must provide at least 14 days' notice to opposing counsel, absent exigent circumstances.   824 F. Supp. at 1206.   Defendants are correct that Rule 45(a)(1)(C) allows the lawyer issuing the subpoena to select the return date, subject only to the requirement that he or she "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1)(emphasis added). However, the rule must be read as a whole. Rule 45(c)(2)(B), which states that the person commanded to produce documents "may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service," file objections. Implicit in the rule then is the assumption that in general, more than 14 days' notice will be provided. See generally 9A Wright & Miller, § 2463 (noting that "fourteen-day objection period only applies to subpoenas demanding the production of documents or the inspection of premises"). What binds the issuing attorney to this assumption of reasonableness is his signature on the subpoena. See generally 1991 Advisory Committee Notes ("Necessarily accompanying the evolution of this power of the lawyer as officer of the court is the development of increased responsibility and liability for the misuse of this power. The latter development is reflected . . . in the requirement imposed by paragraph (3) of this subdivision that the attorney issuing a subpoena must sign it.").

In short, to the extent the magistrate judge's opinion holds that Rule 45 "requires" at least fourteen days notice to opposing counsel, he was incorrect, both because the rule does not explicitly set a time and only addresses notice on the subject of the subpoena. However, to the extent that the magistrate judge deemed fourteen days to be the measure of reasonableness, he was correct. In any event, for the right to object to have any meaning, notice of counsel must be simultaneous with notice to the subject of the subpoena. This hardly places an extra burden on the issuing attorney. In all events, this issue is moot.

[*19] **4. Sanctions** [6]

6 The nonmonetary sanctions are now moot, as they restricted the conduct of defense counsel in this case.

Without articulating the source of his power, the magistrate judge ordered sanctions. 824 F. Supp. at 1203-05. Invoking the Federal Rules of Civil Procedure generally and its inherent authority, the district court affirmed and adopted these sanctions. 152 F.R.D. at 127. Defendants argue that because no particular rule authorizes sanctions here, [7] the sanctions rest entirely on the "inherent powers" of federal courts, and that such power is unavailable here because no bad faith was shown.

7 Defendants were not sanctioned for presenting frivolous legal contentions to the court in a signed pleading, motion or other paper. See Fed. R. Civ. P. 11. Nor were they sanctioned for signing the subpoenas in the first place, see Fed. R. Civ. P. 26(g)(3), or for disobeying a court order requiring them to release documents. See Fed. R. Civ. P. 37. They were not sanctioned for imposing undue burdens or expenses on the Student Health Services. See Fed. R. Civ. P. 45(c)(1).

[*20] It is well settled that [HN6] courts have inherent authority to impose sanctions on a party and attorney for bad faith conduct during the course of litigation. Chambers v. NASCO, Inc., 501 U.S. 32, 43-50, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 765-66, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980); Ray A. Scharer & Co. v. Plabell Rubber Prods., Inc., 858 F.2d 317, 320-21 (6th Cir. 1988); Shimman v. International Union of Operating Engineers, Local 18, 744 F.2d 1226, 1230 (6th Cir. 1984)(en banc). We review a district court's award of sanctions for abuse of discretion. Chambers, 501 U.S. at 55. Before any such sanction may issue, the trial court must find that the conduct at issue "constituted or was tantamount to bad faith." Roadway Express, 447 U.S. at 767; Scharer, 858 F.2d at 321-22. A "mistake" would not

meet the requirements for sanctions. Scharer, 858 F.2d at 322.

Defendants claim that neither the magistrate judge nor the district court made a finding of bad faith and that the record does not support such a finding. Defendants seize upon the magistrate judge's statement that "it has not been demonstrated that [*21] the University or defendants' counsel have done anything illegal or unethical; nor have they disobeyed a Court order." 824 F. Supp. at 1205. Defendants' recitation of an isolated passage is a red herring; the inherent authority to sanction exists for situations where a party or attorney's conduct is not covered by one of the other sanctioning provisions. See Chambers, 501 U.S. at 50 (noting that if bad-faith conduct during course of litigation can be adequately sanctioned under the Rules, the court should ordinarily rely on the Rules rather than its inherent power, though it may certainly do so in its informed discretion). To say that the magistrate judge did not make the requisite findings is to ignore the very core of the magistrate's findings that defendants "violated both the letter and the spirit of the discovery rules in general and Rule 45 in particular" by the issuance of the ex parte communication suggesting early compliance. 824 F. Supp. at 1202. In the magistrate judge's view,

the statements of defendants' attorney and University counsel to the effect that they unilaterally determined that plaintiff's attorney had sufficient time to file a motion by the morning [*22] of April 6, 1993 is indicative of the overly aggressive style of litigation they practiced, which is deserving of sanctions. Defendants' attorney knew plaintiff's attorney would not be prepared by April 6 to oppose the subpoena, because he told her on April 1 that he needed until April 9 to resolve the issue.

The ex parte instruction to the subpoena recipient to produce the records before the deadline indicates an intent to deprive Ms. Mann of her opportunity to challenge the subpoena. Defendants' attorney's failure to advise plaintiff's attorney that she would examine the records on April 6 strongly supports the conclusion that she did not intend to provide him with an opportunity to object. Indeed, in her brief she argued she was not required to notify him. (Doc. 10, p.3). The failure of defendants' attorney and University counsel to advise plaintiff's attorney that the records had already been examined af-

ter they learned he had contacted the Student Health Services on April 6 indicates that they knew they had done something improper.

. . . .

There is no justification for defendants' attorney secretly travelling to the Student Health Services on April 6, 1993, reviewing Ms. Mann's [*23] medical records before Ms. Mann had a reasonable opportunity to object, and sharing the information with University counsel.

824 F. Supp. at 1202-03. See also id. at 1204 ("Furthermore, defendants' attorneys have shown no professional respect for their opponent's right to limit improper discovery.").

The district court, for its part, stated:

Based on the facts of this case, we conclude, without any hesitation, that this is exactly one of those "appropriate" cases warranting "the most severe in the spectrum of sanctions."

. . . .

Consequently, in an effort to deter the Defendants and others for [sic] engaging in such harmful and improper conduct--conduct for which the Defendants have shown not the slightest remorse--as well as to compensate the Plaintiff, and as a punitive measure, we hereby ORDER the Defendants and their attorneys to pay Ms. Mann $ 2,500. Furthermore, with respect to the Plaintiff's Application for Award of Attorney's Fees and the Defendants' Objections, we conclude that the Plaintiff's additional request for $ 3,307.45 for the costs associated with preparing and arguing the Plaintiff's motions for protective order and to quash subpoena, is [*24] also reasonable in light of the outrageous and inexplicable conduct in which the Defendants have engaged in this case.

152 F.R.D. at 127. These findings are more than "tantamount" to a finding of bad faith on the part of defendants; they are explicit findings of bad faith.

For the foregoing reasons, the judgment of the district court in Appeal No. 95-3195 is AFFIRMED; and

the judgment of the district court in Appeal No. 95-3295 is also AFFIRMED.

CONCUR BY: SILER (In Part)

DISSENT BY: SILER (In Part)

DISSENT

SILER, Circuit Judge, concurring in part and dissenting in part. I concur in the majority opinion's conclusion that the appeal by the plaintiff Lisa Mann should be affirmed. However, I respectfully dissent from the majority opinion's conclusion that the cross-appeal by the University of Cincinnati and counsel should be affirmed.

Initially, I agree with the conclusions of the majority that there is no constitutional right of privacy or a physician-patient privilege involved here. My dissent only goes to the authority of the court to sanction the University and its counsel under the facts of this case. In reaching this conclusion, I do not approve of the conduct of defense [*25] counsel, because I feel that it is uncivil. However, uncivil conduct not amounting to a violation of the rules of the court or not rising to the level of unprofessional conduct, contemptuous conduct, or deliberate delaying of the proceedings is not sanctionable.

The conduct which justifies sanctions according to the majority was the *ex parte* letter served on the records custodian, counsel's viewing and copying the records after the subpoena was served, and silence on the part of defense counsel during the telephone conference pertaining to the motion by the plaintiff for a protective order.

First, I do not think that we should fashion a rule that counsel cannot have *ex parte* communications with a potential witness, especially one who is employed by the client. In this case, the one to whom the communication was addressed was an employee of the University of Cincinnati, represented by counsel in this case. Second, if the records custodian was going to deliver the documents anyway, the viewing or copying of the documents by counsel on the day following the service of the subpoena seems to be immaterial. For instance, if the records custodian had delivered the records to defense [*26] counsel on Wednesday, April 7, 1993, before plaintiff's counsel filed his motion for a protective order and to quash, the documents still would have been provided to counsel without violating Rule 45. But Rule 45 was never violated at all. The majority indicates that defendants violated the "spirit of Rule 45." However, Rule 45 does not require the custodian of the records to hold the documents for a specified time period before delivering them to counsel, nor does it mandate that counsel refrain from accepting them until after opposing counsel can object. If we sanction a party for violating the spirit

of the rule without violating the language of the rule, we are essentially rewriting the rule, which would be a mistake on our part.

Now, perhaps counsel should have advised the court during the telephonic conference that she had copied and retained the health records of the plaintiff. Nevertheless, counsel did not lie to the court in response to a question either by the court or by opposing counsel as to whether she had copies of the records. The failure on the part of counsel to advise the magistrate judge that such records had been obtained did not delay the court, as counsel for [*27] the plaintiff would probably have filed the motion to quash and to return the copied records, had he known defense counsel possessed the records.

The district court sanctioned the University and counsel under its inherent authority for bad faith conduct during the course of litigation. The defendants, as the majority asserts, claim that neither the magistrate judge nor the district court found bad faith, and that is correct. However, I agree with the majority that bad faith is implied in the opinion of the district court. It is insufficient under law for bad faith to be implied before sanctions are imposed; the court must make an explicit finding that there was bad faith. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980); Ray A. Scharer & Co. v. Plabell Rubber Prods., Inc., 858 F.2d 317, 321 (6th Cir. 1988). Nevertheless, I would find as a matter of law that the conduct by defense counsel and the University did not constitute bad faith

which would give rise to any sanctions against them. They did not violate any right of privacy or a privilege. They did not violate Rule 45. I disagree with the majority's conclusion that counsel's [*28] conduct "wasted the time of the court and the parties," because the motion to quash would have been heard, anyway. Finally, there is no evidence in the record that counsel received any special advantage for trial by viewing these records.

This case does not present circumstances that approximate the egregious facts in cases cited by the majority and Mann to uphold the sanctions imposed. For instance, in Chambers v. NASCO, Inc., 501 U.S. 32, 41, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991), the conduct was: (1) acts of fraud, (2) filing false and frivolous pleadings, and (3) using tactics of delay, oppression, harassment and massive expense to "reduce [the] plaintiff to exhausted compliance." Moreover, in Roadway Express, Inc., 447 U.S. at 754-56, the conduct was counsel's failure to follow court orders and deliberately delaying the resolution of the case. Finally, in the two cases from this circuit, sanctions were not warranted in Shimman v. International Union of Operating Engineers, Local 18, 744 F.2d 1226, 1238 (6th Cir. 1984) (en banc); and the district court did not follow the correct procedure in effecting sanctions in Ray A. Scharer & Co., 858 F.2d at 321-22. [*29] I would hold that it was an abuse of discretion for the court to impose sanctions under the circumstances of this case. Therefore, I would REVERSE the order imposing sanctions upon the University and its counsel.

LEXSEE



Analysis
As of: Aug 27, 2008

**RANDELL C. PHALP, et al., Plaintiffs, v. CITY OF OVERLAND PARK, KANSAS, et al., Defendants.**

**No. 00-2354-JAR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

**2002 U.S. Dist. LEXIS 9684**

**May 8, 2002, Decided**

**DISPOSITION:** [*1] Nonparty attorney Benjamin Kieler's Motion to Quash Subpoena granted. Plaintiffs' Motion for Protective Order and/or to Quash Subpoena Duces Tecum granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, a city and others, issued a subpoena to a non-party attorney, who formerly represented some or all of plaintiff individuals, for documents and other items relating to his legal representation. The attorney moved to quash the subpoena and the individuals moved for a protective order or to quash the subpoena.

**OVERVIEW:** The attorney and the individuals argued that compliance with the subpoena would have required the attorney to disclose privileged and other protected confidential information. The attorney failed to satisfy the requirements with respect to the privilege objections as he had not described the documents or information to be protected nor provided precise reasons for the objection. In light of the nature of the materials requested, the attorney's motion to quash was granted and he was directed to provide a list with a detailed description of the materials in dispute and specific reasons for the protection claim. The individuals had received sufficient notice of the subpoena given the 11-day time period between the city's service of notice and the date on which the documents were to be produced. Since the documents requested appeared on their face to be relevant to the city's allegation that one individual failed to satisfy the procedural requisites to filing suit, the subpoena was not overbroad. The court conditionally granted the request for a protective order, however, and ordered the individuals to provide a detailed description and specific reasons for the claim of protection.

**OUTCOME:** The attorney's motion to quash the subpoena was granted, but he was ordered to provide a list with a detailed description of the materials in dispute and specific and precise reasons for the claim of protection from disclosure. The individuals' motion for a protective order was granted, but with a similar requirement.

**CORE TERMS:** subpoena, discovery, privileged, disclosure, protective order, relevance, waived, notice, log, notations, documents requested, undue burden, requires disclosure, claim of privilege, citation omitted, overly broad, federal rule, subpoena duces tecum, confidential information, former clients, discovery of admissible evidence, attorney-client, preparing, nonparty, information to enable, requested discovery, requested documents, work product, burden of proof, cause shown

**LexisNexis(R) Headnotes**

*Civil Procedure > Pretrial Matters > Subpoenas*
[HN1]The Federal Rules of Civil Procedure provide that a court shall quash or modify a subpoena if it requires disclosure of privileged or other protected matter and no exception or waiver applies, or if it subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iii) and (iv).

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Protective Orders*
*Civil Procedure > Discovery > Undue Burdens*
[HN2]For good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Such orders may include completely prohibiting certain discovery or imposing a designated method by which discovery must be conducted. Fed. R. Civ. P. 26(c)(1) and (3).

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Pretrial Matters > Subpoenas*
[HN3]One seeking a protective order or to quash a subpoena carries the burden to show good cause and/or the right to be protected.

*Civil Procedure > Pretrial Matters > Subpoenas*
[HN4]Under Fed. R. Civ. P. 45(d)(2), when information subject to a subpoena is withheld on a claim that such information is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable the demanding party to contest the claim.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Evidence > Privileges > Attorney-Client Privilege > Scope*
[HN5]Parties objecting to discovery on the basis of the attorney-client privilege bear the burden of establishing that it applies. To carry the burden, they must describe in detail the documents or information to be protected and provide precise reasons for the objection to discovery. A blanket claim as to the applicability of a privilege does not satisfy the burden of proof.

*Legal Ethics > Client Relations > Confidentiality of Information*
[HN6]Although it is the client who holds the privilege, the client has the authority to prevent his or her lawyer from disclosing privileged information and such privilege may be claimed by the client in person or by his or her lawyer. Kan. Stat. Ann. § 60-426(a).

*Civil Procedure > Pretrial Matters > Subpoenas*

[HN7]According to Fed. R. Civ. P. 45(b)(1), prior notice of any commanded production of documents shall be served on each party.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Relevance*
[HN8]Under Fed. R. Civ. P. 26(b)(1), parties may obtain discovery regarding any matter that is relevant to the claim or defense of any party. Further, relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Relevance*
[HN9]When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. Similarly, a party resisting discovery on the grounds that a request is overly broad has the burden to support its objection, unless the request is overly broad on its face. When the relevancy of propounded discovery is not apparent, however, its proponent has the burden to show the discovery relevant.

**COUNSEL:** For RANDELL C PHALP, ARONA ASH, plaintiffs: James E. Kiley, Jr., Kiley, Wiesner & Frackowiak, L.L.P., Overland Park, KS.

For RANDELL C PHALP, ARONA ASH, plaintiffs: Laurence J Eisenstein, Brian G Friel, Swidler Berlin Shereff Friedman, LLP, Washington, DC.

For RANDELL C PHALP, ARONA ASH, plaintiffs: Tamara Seltzer, Ellen Harris, Judge David L. Bazelon Center for Mental Health Law, Washington, DC.

For OVERLAND PARK, KANSAS, CITY OF, defendant: Daniel B. Denk, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS.

TODD MILLER DEAL, defendant, Pro se, Lansing, KS.

For SHAUN MICHAEL GARRETT, defendant: Bruce D. Mayfield, Mayfield Law Office, Overland Park, KS.

RON HUNKE, defendant, Pro se, Shawnee Mission, KS.

**JUDGES:** David J. Waxse, United States Magistrate Judge.

**OPINION BY:** David J. Waxse

**OPINION**

**MEMORANDUM AND ORDER**

Pending before the Court are the following motions:

> . Nonparty attorney Benjamin M. Kieler's Motion to Quash Subpoena (doc. 182); and

> . Plaintiffs' [*2] Motion for Protective Order and/or to Quash Subpoenas Duces Tecum (doc. 192).

At issue in both of the motions is a subpoena issued to Benjamin M. Kieler, a nonparty attorney who formerly represented some or all Plaintiffs in this matter. More specifically, the subpoena commands Mr. Kieler to produce "any and all documents or other items in [Mr. Kieler's] possession, custody or control relating to [Mr. Kieler's] legal representation of Randell Phalp, Arona Ash, Scott Phalp and/or Aubrey Phalp for the years 1998-present."

In support of his Motion to Quash, Benjamin Kieler states that compliance with the subpoena necessarily would require him to disclose privileged and other protected confidential information of his former clients. In support of their Motion for Protective Order and/or to Quash, Plaintiffs similarly argue the material requested in the subpoena is protected from disclosure by privilege.

In response to the arguments presented by Plaintiffs and Mr. Kieler, Defendants argue that the documents referenced in the subpoena duces tecum are relevant to material jurisdictional issues. Defendants further argue Mr. Kieler fails to comply with Fed. R. Civ. P. [*3] 45 by preparing a privilege log for those responsive documents Mr. Kieler and/or Plaintiffs believe are protected from disclosure because they are attorney-client privileged and/or work product materials; thus, Defendants cannot accurately evaluate whether or not the asserted claims of protection are justified.

**DISCUSSION**

[HN1]The Federal Rules of Civil Procedure provide that a court "shall quash or modify [a] subpoena if it . . . requires disclosure of privileged or other protected matter and no exception or waiver applies, or [if it] subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii) and (iv). Moreover, and [HN2]for good cause shown, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Such orders may include completely prohibiting certain discovery or imposing a designated method by which discovery must be conducted. Fed. R. Civ. P. 26(c)(1) and (3). [HN3]One seeking a protective order or to quash a subpoena carries the burden to show good cause and/or the right to be protected. Sentry Ins. v. Shivers, 164 F.R.D. 255, 256 (D. Kan. 1996). [*4]

. **Motion to Quash Subpoena**

Attorney Benjamin Kieler seeks to quash the subpoena on the grounds that compliance with the subpoena necessarily would require him to disclose privileged and other protected confidential information of his former clients. Defendants respond by arguing Mr. Kieler has waived any right to assert privilege because he failed to provide a privilege log as required by federal rule. See Fed. R. Civ. P. 45(d)(2) [HN4]("when information subject to a subpoena is withheld on a claim that such information is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable the demanding party to contest the claim.").

[HN5]"Parties objecting to discovery on the basis of the attorney-client privilege bear the burden of establishing that it applies." ERA Franchise Sys. v. Northern Ins. Co., 183 F.R.D. 276, 278 (D. Kan. 1998) (citing Boyer v. Bd of County Comm'rs, 162 F.R.D. 687, 688 (D. Kan. 1995)). "To carry the burden, they must describe in detail [*5] the documents or information to be protected and provide precise reasons for the objection to discovery." ERA, 183 F.R.D. 276 at 278-79 (citing National Union Fire Ins. Co. v. Midland Bancor, Inc., 159 F.R.D. 562, 567 (D. Kan. 1994)). "A 'blanket claim' as to the applicability of a privilege does not satisfy the burden of proof." Id. (citing Kelling v. Bridgestone/Firestone, Inc., 157 F.R.D. 496, 497 (D. Kan. 1994)).

Mr. Kieler fails to satisfy the requirements cited above with respect to the privilege objections asserted on behalf of his former clients [1]. As such, the Court does not possess sufficient information to enable it to determine whether each element of the asserted privilege is satis-

fied. *See Jones v. Boeing Co., 163 F.R.D. 15, 17 (D. Kan. 1995)* (holding that a claim of privilege fails upon insufficient evidence as to any element). Given Mr. Kieler's failure to provide the required information, the Court could deny his Motion to Quash. In light of the nature of the materials requested, however, the Court will grant Mr. Kieler's Motion to Quash but direct Mr. Kieler to provide to Defendants within twenty (20) days from the [*6] date of this Order a list with "a detailed description of the materials in dispute and . . . specific and precise reasons for [its] claim of protection from disclosure." *Snowden v. Connaught Lab., Inc., 137 F.R.D. 325, 334 (D. Kan. 1991)* (citation omitted). The description should include at least the following information for each such document:

1. A description of the document (i.e. correspondence, memorandum, etc.);

2. Date prepared or date notations made;

3. Date of document (if different from # 2);

4. Who prepared the document or made notations on the document;

5. For whom the document was prepared and to whom the document was directed;

6. Purpose of preparing the document or making the notations;

7. Number of pages of each document; and

8. Basis for withholding discovery. [2]

1 [HN6]*Although it is the client who holds the privilege, the client has the authority to prevent his or her lawyer from disclosing privileged information and such privilege may be claimed by the client in person or by his or her lawyer. K.S.A. 60-426(a).*

[*7]

2 *Mr. Kieler appears to claim it is an "undue burden" to produce the documents because the materials currently are located in an offsite storage facility without index.* Given creating a privilege log necessarily involves locating the documents, the Court anticipates Mr. Kieler also will claim it is an undue burden to create the privilege log. Without detailed information in terms of time and expense involved in locating the documents, however, the Court finds that compilation of a privilege log is not unduly burdensome. Thus, Mr. Kieler is not relieved of his duty based on undue burden. *See Transamerica Computer Co. v. IBM, 573 F.2d 646, 649 (9th Cir. 1978) (seventeen million potentially privileged documents).*

Defendants may then request production of any document for which the claim of privilege appears inadequate or waived and, if Mr. Kieler objects as provided in *Fed. R. Civ. P. 45*, Defendants may file the appropriate motion pursuant to that rule.

. Motion for Protective Order

**In support of their request for protection with regard to production [*8] of the referenced documents by Mr. Kieler, Plaintiffs argue (1) Defendants failed to timely serve and/or otherwise give notice of the subpoena; (2) the subpoena is overly broad in scope; and (3) the subpoena requires disclosure of materials protected by the attorney-client privilege and the work product doctrine.**

. **Failure to Timely Serve and/or Otherwise Give Notice of Subpoenas**

*In their Motion, Plaintiffs assert the subpoena issued to Mr. Kieler should be quashed based on a violation of Fed. R. Civ. P. 45(b)(1). [HN7]This subsection provides that "prior notice of any commanded production of documents . . . shall be served on each party." This portion of the rule was added in 1991 and, as explained by the advisory committee notes to the 1991 amendments, "the purpose of such notice is to afford other parties an opportunity to object to the production."*

*Here, Defendant City of Overland Park, Kansas served a notice of Mr. Kieler's subpoena concurrent with the issuance of the actual subpoena on February 4, 2002. The documents were not to be produced pursuant to the subpoena until February 15, 2002. On February 14, 2002, Plaintiffs filed their motion for protective [*9] order and/or to quash subpoena objecting to the subpoena. Based on these facts, the Court finds Plaintiffs were afforded an opportunity to object to the production and thus - given the stated purpose of Rule 45(b)(1) - the Court finds Plaintiffs received sufficient notice of the subpoena.*

. **Overbreadth**

*Plaintiffs further seek protection from disclosure of the documents requested within the subpoena on grounds that the request is overly broad in scope. The Court disagrees.*

[HN8]*Amended Rule 26(b)(1) provides that "parties may obtain discovery regarding any matter . . . that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1).* [3] Further, "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

3   *Discovery of information "relevant to the subject matter involved in the action," previously allowed as a matter of right under the prior version of Rule 26(b)(1), now can be undertaken only with leave of court or for good cause shown. Since December 1, 2000, amended Rule 26(b)(1) has applied to federal court proceedings insofar as "just and practicable." It is unnecessary to decide whether the former or current version of Rule 26 is applicable here, because the Court finds the documents requested relevant under the current, more narrow version of the Rule.*

[HN9]

[*10]   *When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. Scott v. Leavenworth Unified School Dist. No. 453, 190 F.R.D. 583, 585 (D. Kan. 1999).* Similarly, a party resisting discovery on the grounds that a request is overly broad has the burden to support its objection, unless the request is overly broad on its face. *Etienne v. Wolverine Tube, Inc., 185 F.R.D. 653, 656 (D. Kan. 1999); Hilt v. SFC Inc., 170 F.R.D. 182, 186 (D. Kan. 1997).* When the relevancy of propounded discovery is not apparent, however, its proponent has the burden to show the discovery relevant. *Pulsecard, Inc. v. Discover Card Serv., Inc., 168 F.R.D. 295, 309 (D. Kan. 1996).*

*Pursuant to amended Rule 26(b)(1), the Court finds the documents requested in the subpoena appear on their [*11]   face to be relevant to Defendants' allegation that Arona Ash failed to satisfy the procedural prerequisites to filing suit here. The Court's finding is grounded in the possibility that responsive documents may lead to the discovery of admissible evidence. [4]*

4   *The Court notes that the touchstone to the documents requested in the subpoena is not that such discovery will result in evidence which is, or even may be, admissible at trial, but rather that such discovery is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).*

*Because the Court finds the discovery sought appears relevant on its face, Plaintiffs now have the burden to establish lack of relevance by demonstrating that*

the requested discovery (1) does not come within the scope of relevance as defined under *Fed. R. Civ. P. 26(b)(1)*, or *(2)* is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Scott v. Leavenworth Unified School Dist. No. 453, 190 F.R.D. at 585.* Plaintiffs do not discuss relevance in their briefing, but instead argue only the substantive issue - that Arona Ash was Mr. Kieler's client. Accordingly, Plaintiffs have failed to meet their burden; thus, the Court finds the subpoena is not overly broad in scope.

. *The Subpoena Requires Disclosure of Privileged Materials*

*Finally, Plaintiffs seek protection from disclosure of the documents requested within the subpoena on grounds that compliance with the subpoena necessarily would require disclosure of privileged and protected confidential information.* Defendants respond by arguing Plaintiffs have waived any right to assert their privilege because they failed to provide a privilege log as required by federal rule. See *Fed. R. Civ. P. 45(d)(2)* ("when information subject to a subpoena is withheld on a claim that such information is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable [*13]   the demanding party to contest the claim.").

*Based on the discussion set forth in the preceding section, Plaintiffs have the burden here to establish the materials are privileged and, in order to carry the burden, they must "describe in detail the documents or information to be protected and provide precise reasons for the objection to discovery." ERA Franchise Sys. v. Northern Ins. Co., 183 F.R.D. at 278* (citations omitted). "A 'blanket claim' as to the applicability of a privilege does not satisfy the burden of proof." Id. (citation omitted).

*As with Mr. Kieler, Plaintiffs fail to satisfy the requirements of Fed. R. Civ. P. 45(d)(2) with respect to their privilege objections. As such, the Court does not possess sufficient information to enable it to determine whether each element of the asserted privilege is satisfied. Although, again, the Court could deny Plaintiffs' Motion for Protective Order, the Court conditionally will grant the protective order but direct Plaintiffs to provide Defendants within twenty (20) days from the date of this Order a list with "a detailed description [5] of the materials in dispute and . . . specific and   [*14]   precise reasons for [their] claim of protection from dis-*

closure." *Snowden v. Connaught Lab., Inc., 137 F.R.D. at 334 (D. Kan. 1991)* (citation omitted). Defendants may then request production of any document for which the claim of privilege appears inadequate or waived and, if Plaintiffs object as provided in *Fed. R. Civ. P. 45*, Defendants may file the appropriate motion.

5   As noted earlier in this opinion, the description should include at least the following information for each such document:

. A description of the document (i.e. correspondence, memorandum, etc.);

. Date prepared or date notations made;

. Date of document (if different from # 2);

. Who prepared the document or made notations on the document;

. For whom the document was prepared and to whom the document was directed;

. Purpose of preparing the document or making the notations;

. Number of pages of each document; and

. Basis for withholding discovery.

**[*15] CONCLUSION**

Based on the discussion above,

(1) Nonparty attorney Benjamin Kieler's Motion to Quash Subpoena (doc. 182) is granted to the extent that he shall not be required to produce the requested documents at this time. It is further ordered, however, that Mr. Kieler shall provide Defendants within twenty (20) days from the date of this Order a list with a detailed description of the materials in dispute and specific and precise reasons for the claim of protection from disclosure. Defendants may then request production of any document for which the claim of privilege appears inadequate or waived and, if Mr. Kieler objects as provided in *Fed. R. Civ. P. 45*, Defendants may file the appropriate motion; and

(2) Plaintiffs' Motion for Protective Order and/or to Quash Subpoena Duces Tecum (doc. 192) is granted to the extent that Mr. Kieler shall not be required to produce the requested documents at this time. It is further ordered, however, that Plaintiffs shall provide Defendants within twenty (20) days from the date of this Order a list with a detailed description of the materials in dispute and specific and precise reasons for [*16] the claim of protection from disclosure. Defendants may then request production of any document for which the claim of privilege appears inadequate or waived and, if Plaintiffs object as provided in *Fed. R. Civ. P. 45* or *26*, Defendants may respond accordingly.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 8th day of May, 2002.

David J. Waxse

United States Magistrate Judge

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2008 WL 151836 (S.D.Ind.)

C Woods v. Fresenius Medical Care Group of North
America
S.D.Ind.,2008.
Only the Westlaw citation is currently available.
United States District Court,S.D.
Indiana,Indianapolis Division.
Josephine WOODS, Plaintiff,
v.
FRESENIUS MEDICAL CARE GROUP OF
NORTH AMERICA, d/b/a Renal Care Group, Inc., et
al., Defendants.
No. 1:06-cv-1804-RLY-WTL.

Jan. 16, 2008.

Tae K. Sture, Sture Legal Services LLC,
Indianapolis, IN, for Plaintiff.
Nadine C. Abrahams, Jackson Lewis LLP, Chicago,
IL, Andrew W. Gruber, Christopher R. Taylor,
Bingham Mchale LLP, Indianapolis, IN, for
Defendants.

### ENTRY ON MOTION TO QUASH

Hon. WILLIAM T. LAWRENCE, United States
Magistrate Judge.
*1 This cause is before the Magistrate Judge on the
Plaintiff's motion to quash. The motion is fully
briefed, and the Magistrate Judge, being duly
advised, **GRANTS** the motion for the reasons set
forth below.

Plaintiff Josephine Woods alleges in this case that the
Defendants discriminated against her on the basis of
her race by reducing her work hours and denying her
a promotion and then retaliated against her for filing
discrimination charges and otherwise complaining
about discriminatory conduct. In the instant motion,
the Plaintiff seeks to quash the non-party subpoenas
issued by Defendant Fresenius Medical Care Group
of North America (hereinafter "the Defendant")
seeking her employment records from her employer
immediately prior to the Defendant and her current
employer.[FN1] The Plaintiff argues that she has a
privacy interest in the documents sought by the
subpoenas and that the documents are irrelevant to

the claims and defenses in this case.

> FN1. As an initial matter, the Plaintiff
> argues that the Defendant violated Federal
> Rule of Civil Procedure 45(b)(1) by failing
> to give her notice of the subpoenas before it
> served them. The subpoenas were issued
> prior to the December 1, 2007, amendment
> of Rule 45(b)(1) which makes it clear that
> such notice is required. Under the previous
> version of the rule, it was ambiguous
> whether the notice was required prior to
> service of a subpoena or prior to the return
> date listed on the subpoena, although courts
> had "tended to converge on an interpretation
> that requires notice to the parties before the
> subpoena is served." Rule 45(b)(1) Advisory
> Committee's Note.

In response, the Defendant first argues that the
Plaintiff lacks standing to seek to quash the
subpoenas. This argument is without merit. "A party
has standing to move to quash a subpoena addressed
to another if the subpoena infringes upon the
movant's legitimate interests." U.S. v. Raineri, 670
F.2d 702, 712 (7th Cir.1982).[FN2] The Plaintiff
correctly asserts that she has a legitimate interest in
protecting the confidentiality of much of the
information contained in her employment records and
also in maintaining her relationship with her current
employer. The Defendant responds to this argument
as follows: "If Plaintiff's argument is taken to its
logical extreme, any time a defendant issues a
subpoena for employment records in an employment
discrimination matter, such subpoena should be
quashed because it seeks personnel records. That is
contrary to the law and illogical." Defendant's
Response at 2. It is the Defendant's argument that is
illogical, however. To say that the Plaintiff's interest
in the private information contained in the records
sought by the Defendant gives her standing to object
to the subpoenas is not the equivalent of saying that
the subpoenas should be quashed; rather, it simply
means that the Plaintiff is entitled to have her
arguments heard on the issue.

> FN2. The Defendant cites to three
> unpublished decisions in support of its

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 151836 (S.D.Ind.)

argument that the Plaintiff lacks standing to move to quash the subpoenas because they were not issued to her. However, the Defendant fails to acknowledge that while these cases each state the proposition that "[p]arties do not *generally* have standing to bring a motion to quash on behalf of a subpoena recipient,"*Hunt v. Northwest Sub. Comm. Hosp.,* 2006 U.S. Dist. LEXIS 3281 at *4 (N .D.Ill. Jan. 30, 2006) (emphasis added), they also each recognize the fact that "a party to the case gains standing when an assertion of 'personal right or privilege' is made regarding the sought-after documents."*Manufacturer Direct, LLC v. Directbuy, Inc.,* 2007 U.S. Dist. LEXIS 10250 at *5,2007 WL 496382 (N.D.Ind. Feb. 12, 2007).

Next, the Defendant argues that the information sought by the subpoenas is relevant and discoverable because it is "information relating to [the Plaintiff's] employment, which she has put at issue in this matter."However, the Plaintiff has not placed her entire employment history at issue, but rather only her employment with the Defendant. While it is certainly theoretically possible that records from a previous or subsequent employer might be relevant in an employment discrimination case, such a theoretical possibility does not make the records discoverable. Rather, the Defendant must demonstrate that the documents it seeks actually are relevant to the claims and defenses in this case. Further, it is the Court's duty to consider whether "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in this litigation, and the importance of the proposed discovery in resolving the issues ."Applying these factors leads to the conclusion that an employment discrimination plaintiff does not open her entire work history up for discovery by the defendant as a matter of course; rather, the defendant must demonstrate a specific reason why the information is relevant to the particular claims and defenses in the case at hand. In other words, absent a showing that the subpoenas are reasonably calculated to lead to the discovery of admissible evidence, the Defendant is simply embarking on the proverbial fishing expedition, and the theoretical potential relevance of any information obtained by such discovery is outweighed by the interests of the plaintiff discussed above.

**\*2** The Defendant makes several arguments regarding the relevance of the information it seeks in this case. First, it argues that because "Plaintiff's managerial and supervisory experience were among the reasons for its decision not to select Plaintiff for the Clinic Manager position[,] Plaintiff's experience, including her employment records from her prior employer, is directly relevant to Plaintiff's failure to promote claims."Defendant's Response at 6. This argument is entirely without merit. Any consideration by the Defendant of the Plaintiff's experience had to be based upon the information that the Defendant had at the time it made the decision not to promote her. Therefore, it is completely irrelevant what her actual experience was; what is relevant is what the Defendant believed it to be at the time.

Next, the Defendant argues that it is entitled to the information it seeks because "evidence concerning Plaintiff's prior employment is discoverable and relevant to show Plaintiff's credibility and motive in bringing suit."However, the Defendant points to nothing that indicates that the Plaintiff was untruthful to the Defendant or her other employers; rather, the Defendant simple wants to "fish around" in order to see what it might uncover. Similarly, the Defendant argues that information from the Plaintiff's current employer might demonstrate that any emotional distress she is experiencing was not caused by the Defendant, but rather by "disciplinary, performance, attendance or other issues" in her current position. There does not appear to be any reason to believe that is the case, however, and, again, the Defendant simply is not entitled to amass a collection of documents in hopes of finding something useful. The same is true with regard to the Defendant's assertion that it is entitled to the discovery in question because it might lead to evidence that would support an after-acquired evidence defense.

Because the Defendant has failed to demonstrate that its subpoenas to the Plaintiff's past and current employers are based upon anything other than the Defendant's hope that the documents sought might prove useful in this case, the Plaintiff's motion to quash the subpoenas is **GRANTED.**

SO ORDERED.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 151836 (S.D.Ind.)

S.D.Ind.,2008.
Woods v. Fresenius Medical Care Group of North America
Not Reported in F.Supp.2d, 2008 WL 151836 (S.D.Ind.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 591451 (N.D.Ill.)

Page 1

**H**E.E.O.C. v. Kim and Ted, Inc.
N.D.Ill.,1995.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Plaintiff,
andDeborah Tabor, Plaintiff-Intervenor,
v.
KIM AND TED, INC., d/b/a Old Main Inn, Theodore
Strompolis, and Kimon Kokonas, Defendants.
No. 95 C 1151.

Oct. 3, 1995.

*MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.
*1 The Equal Employment Opportunity Commission
("EEOC") and Deborah L. Tabor (collectively
"plaintiffs") sue Kim and Ted, Inc., d/b/a Old Main
Inn, Theodore Strompolis, and Kimon Kokonas
(collectively "defendants") under Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. §
2000e*et seq.* Plaintiffs allege that defendants
discriminated against Tabor and other female
employees by subjecting them to sexual harassment,
conditioning continued employment on their assent to
sexual conduct and constructively discharging them.
The EEOC moves to quash several subpoenas served
by defendants on class members and non-class
members, and the employers of non-class members,
as well as to bar defendants in the future from serving
similar subpoenas, pursuant to Fed.R.Civ.P. 45(c).

*BACKGROUND*

The amended complaint seeks back pay,
compensatory damages and/or punitive damages on
behalf of each alleged victim of sexual harassment.
On April 19, 1995,[FN1] the court ordered discovery to
be completed by October 19. On May 30, the EEOC
answered defendants' interrogatories, identifying
Karin Anderson, Kathy Avalos, Breda Dean, Lisa
Malay, Niva Pearson and Margaret Wojcik, among
others, as potential class members for whom the
EEOC seeks back pay, compensatory damages and/or

punitive damages.

On August 2, the EEOC moved to compel defendants
to answer its interrogatories; at that time, defendants'
responses were 36 days late. On August 9, the court
granted the EEOC's motion to compel and directed
defendants to comply with all outstanding discovery
by August 18. *See* Order, No. 95 C 1151 (N.D.Ill.
Aug. 9, 1995). On August 18, defendants served the
EEOC with its discovery responses, which included
the identity of defendants' current and former
employees.

On August 21, defendants served subpoenas on
current and previous employers of Dean, Malay and
Wojcik. Defendants sought each woman's entire
personnel file, all documents reflecting monies
earned and rate of compensation, and all documents
pertaining to any benefits received. Plaintiff's Exhibit
("Pl.Ex.") C. The subpoenas for records had a return
date of September 12. Defendants have not served
subpoenas on employers of Anderson, Avalos or
Pearson.

On August 29, 1995, the EEOC informed defendants
by letter that the EEOC did not seek any relief for
Avalos and Malay. The EEOC noted that it may call
Malay as a trial witness. The EEOC verbally
informed defendants on many occasions, and by
letter dated September 11, that the EEOC did not
seek relief for Anderson, Pearson and Wojcik.

On September 8, the court granted the EEOC's agreed
motion for a protective order. The protective order
applies to "[a]ny and all federal and/or state tax
returns and all schedules, exhibits and other attached
forms thereto, including all 1099s and W-2s"
produced by the plaintiffs or any class member.

On September 8, the EEOC informed defendants'
counsel that the EEOC objected to the subpoenas
directed at Malay's and Wojcik's employers because
the EEOC did not seek relief on their behalf. The
EEOC requested that the subpoenas be withdrawn.
Defendants refused to withdraw the subpoenas,
claiming that these records were relevant to the ease
of securing a similar waitress job in the community.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 591451 (N.D.Ill.)

**\*2** That same day, defendants served Dean, a class member, with a subpoena to appear for deposition on September 11 with documents: (i) reflecting any statement Dean made concerning this case; (ii) pertaining to treatment or therapy stemming from the alleged unlawful actions; (iii) relating to police reports pertaining to Dean and defendants; (iv) reflecting Dean's earnings while employed for defendants and subsequently, including all tax documentation; (v) reflecting Dean's employment history prior to working for defendants; (vi) reflecting Dean's efforts to obtain employment subsequent to working for defendants; and (viii) relating to any of Dean's damage claims. Pl.Ex. E. On September 11, both prior to and at Dean's deposition, the EEOC stated it would not seek back pay on Dean's behalf, but only compensatory and punitive damages. Additionally, the EEOC objected to Dean's subpoena because her state and federal income taxes were irrelevant because her back pay was no longer at issue.

On September 12, defendants served a deposition and records subpoena on witness/non-class member Christine LaBarre. The LaBarre subpoena is identical to the subpoena served on Dean.

### DISCUSSION

The EEOC seeks to: (i) bar defendants from discovering tax information of class members who do not seek back pay; (ii) quash Dean and LaBarre's deposition subpoenas requesting, in part, their state and federal income tax records; (iii) quash the subpoenas directed to the current and previous employers of Dean, Malay and Wojcik; and (iv) bar defendants from subpoenaing the employment records and/or state and federal tax records of any other non-class member. Defendants contest the EEOC's ability to bring this motion to quash on behalf of non-party witnesses. Moreover, defendants argue that the material sought is relevant to class members' mitigation of damages, which defendants claim applies to compensatory damages as well as back pay. Finally, defendants contend that purported privacy interests should not be affected because disclosure would be pursuant to the protective order entered on September 8.

### I. EEOC Standing

The EEOC argues that it has standing to file its motion on behalf of non-party witnesses the EEOC identified to defendants who are affected by the subpoenas. The EEOC claims that defendants are intimidating witnesses who may testify against them by intruding into their private lives.

The EEOC is statutorily authorized to investigate charges of employment discrimination and may bring a civil action in its own name for specific relief for a group of aggrieved individuals. *See* 42 U.S.C. § 2000e-5; *General Telephone Co. v. E.E.O.C.*, 446 U.S. 318, 333 (1980); *Occidental Life Ins. Co. v. E.E.O.C.*, 432 U.S. 355, 368 (1977). The EEOC need not be certified as a class representative, nor does Rule 23 apply to EEOC actions brought in its own name. *General Telephone*, 446 U.S. at 324, 330-33.

Under Rules 30 and 31, a litigant may depose a third party by oral or written examination. The litigant can compel the third party to produce tangible evidence at the deposition by serving the third party with a subpoena pursuant to Rule 45. But a party's subpoena power is not unlimited. Like other means of discovery, a subpoena is limited to matters that are relevant to the pending action and appear reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1); *Greer Properties, Inc. v. La Salle National Bank*, No. 87 C 10983, 1990 WL 44692, at \*1 (N.D.Ill. Apr. 9, 1990). A subpoena may not require disclosure of privileged or protected matters. Fed.R.Civ.P. 45(c). Rule 45(c)(3) authorizes a trial court to quash or modify a subpoena "as a means of protecting the witness from misuse of the subpoena power." Fed.R.Civ.P. 45, advisory committee's note on 1991 amendment, at 175 (West 1995). Given the EEOC's legislative authority, the purpose behind Rule 45 and the EEOC's claim that defendants' misused their subpoena power, the EEOC may move to quash subpoenas affecting defendants' former employees who are not class members.

**\*3** In addition, the EEOC's motion does not seek simply to quash or modify defendants' subpoenas. Rather, the EEOC is seeking a broad order to protect class and non-class members in the future from disclosing confidential and purportedly irrelevant information. Accordingly, the court treats the EEOC's motion as seeking a protective order limiting the scope of defendants' discovery pursuant to Rule

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 591451 (N.D.Ill.)

Page 3

26(c).[FN2]    Because <u>Rule 26(c)</u> motions may be brought by a party or by the person from whom discovery is sought, the EEOC has standing to bring its motion.

## II. *Discovery Of Requested Documents*

The EEOC concedes that defendants may discover class members' lost wages and efforts to mitigate back pay damages. Moreover, class members' tax information is subject to the September 8 protective order. The EEOC argues that defendants' may not discover tax information from non-class members or class members not claiming back pay. The EEOC contends that this information is private and confidential, immaterial to any issue in the pending action, and not reasonably calculated to lead to admissible evidence. Defendants counter that tax information from non-class members and class members who are not claiming back pay is relevant to class members' duty to mitigate with respect to back pay and compensatory damages.

### A. *Class Members*

The duty to mitigate damages most typically applies to back pay damages. The EEOC apparently argues that the duty to mitigate no longer applies if there is no back pay claim. Hence, the tax information would be immaterial.

The EEOC's argument is buttressed by the fact that compensatory damages available under the 1991 amendments to Title VII ("1991 amendments") do not include back pay or "any other type of relief authorized under section 706(g)." <u>42 U.S.C. § 1981a(b)(2)</u>. Section 706(g) affords equitable relief: reinstatement with or without back pay. <u>42 U.S.C. § 2000e-5(g)</u>. But front pay is available as compensatory damages under the 1991 amendments. The 1991 amendments provide that compensatory damages are awarded for future pecuniary losses as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. <u>42 U.S.C. § 1981a(b)(3)</u>; <u>Hutchison v. Amateur Electronic Supply, Inc.</u>, 840 F.Supp. 612, 621 n. 7 (E.D.Wis.1993), *aff'd in part and rev'd in part,*42 F.3d 1037 (7th Cir.1994). The EEOC does not dispute that all class members seek future pecuniary losses. First Amended Complaint at p. 5, ¶ D.

Mitigation principles apply to front pay and loss of pecuniary losses. <u>Hutchison,</u> 42 F.3d at 1044. To establish the affirmative defense of failure to mitigate damages, the defendants must show that: (1) the plaintiff failed to exercise reasonable diligence to mitigate her damages, and (2) there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence. <u>Id.</u> at 1044. Tax information and personnel documents from employers for whom class members have worked subsequent to working for defendants are relevant and may lead to admissible evidence concerning mitigation. Furthermore, this information is subject to the September 8 protective order. Accordingly, the EEOC's motion to quash subpoenas served on Dean and Dean's employers, and for an order precluding discovery of class members' tax information and personnel documents from class members' employers other than defendants, must be denied.

### B. *Other Employees*

*4 The EEOC's argument is more persuasive as it relates to non-class members who are either witnesses (Malay and LaBarre) or not witnesses (Wojcik) (collectively "non-class members"). Defendants contend that tax and personnel information from non-class members should be discoverable for the same reasons as it is discoverable from class members. However, the relevancy of non-class members' tax information on class members' mitigation efforts is slight if any. While tax returns in the hands of a taxpayer are not privileged, there is a policy against the disclosure of tax returns unless a litigant raises the issue herself. <u>Poulos v. Naas Foods, Inc.,</u> 959 F.2d 69, 74-75 (7th Cir.1992); <u>Cohn v. Taco Bell Corp.,</u> No. 92 C 5852, 1994 WL 383975, at *4 (N.D.Ill. July 20, 1994). Non-class members are not litigants; their income is not at issue. <u>Cohn,</u> 1994 WL 383975 at *4. Moreover, defendants have access to information concerning class members' mitigation efforts. Thus, any possible relevancy of non-class members' tax information is substantially outweighed by non-class members' hardship as expressed in the policy against disclosure.

Accordingly, the EEOC's motion to bar discovery of non-class members' tax information must be granted.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 591451 (N.D.Ill.)

Defendants' LaBarre subpoena must exclude her federal and state tax returns, including 1099's and W-2's.

Non-class members' personnel files from employers other than defendants is of scant probative value on the issue of class members' mitigation efforts. Personnel files usually contain more information than defendants claim they need. The EEOC does not dispute that defendants may discover personnel information relating to witnesses' dates of employment with subsequent employers.

Accordingly, the EEOC's motion to quash and to limit the scope of defendants' discovery relating to non-class members' subsequent employers must be granted in part. Defendants are not entitled to another employer's entire personnel file on a non-class member. Defendants' subpoenas on the employers of Malay and Wojcik must be modified; the request made in paragraph one shall be limited to documents relating to their date of hire. Future subpoenas served on non-class members' employers shall be modified accordingly.

### CONCLUSION

Plaintiff Equal Employment Opportunity Commission's motion to quash is granted in part and denied in part. Plaintiff's motion relating to Breda Dean and discovery of other class-members' tax information is denied. Plaintiff's motion relating to non-class members' tax information is granted. Plaintiff's motion relating to non-class members' personnel information is granted in part. Paragraph one of defendants' subpoenas served on the employers of Malay and Wojcik, and future subpoenas served on non-class members' employers, must be limited to documents relating to the individual's date of hire.

Plaintiff shall serve its portion of the joint final pretrial order on defendants by Friday, October 27, 1995. On the court's own motion, presentation of the joint final pretrial order is extended from November 2, 1995 to November 13, 1995 at 9:00 a.m. The case is placed on the December trial calendar.

FN1. All dates take place in 1995 unless otherwise noted.

FN2. The EEOC establishes that it has in good faith conferred or attempted to confer with defendants in an attempt to resolve the dispute without court action.

N.D.Ill.,1995.

E.E.O.C. v. Kim and Ted, Inc.

Not Reported in F.Supp., 1995 WL 591451 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1985 WL 2867 (N.D.Ill.)

CRHONDA A. RHODES, Plaintiff, v. SUN ELECTRIC CORPORATION and H. ALLAN STARK, Defendants.

Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
RHONDA A. RHODES, Plaintiff,
v.
SUN ELECTRIC CORPORATION and H. ALLAN STARK, Defendants.
No. 85 C 1214.

September 24, 1985.

MEMORANDUM AND ORDER

MORAN, District Judge.

*1 Plaintiff has every right to pursue her claims and defendants have every right to defend. There is no reason, during the course of discovery, for defendants to apprise plaintiff's present employer of the details of the dispute which led to this lawsuit. If the sole relevant information possessed by the present employer was plaintiff's compensation, for damages purposes, that information could in all probability be adequately furnished by plaintiff through paychecks and other information prepared by the present employer. But the areas of relevant inquiry go farther.

For example, plaintiff claims her termination was because of her sex. Defendants are entitled to know whether she ascribed other reasons for leaving Sun when and if she discussed that matter with her present employer. She claims extreme distress. Defendants are entitled to know how she appeared to her present employer when she approached it for employment. That does not mean, however, that it would be proper in any inquiry to suggest by the way the inquiry was made that defendants thought plaintiff was laboring under some emotional stress. Indeed, defendants' self-interest is to seek to establish the absence of emotional distress. The present employer is a neutral witness. The sole justifiable purpose of the discovery is obtaining information, which can be obtained by neutral and limited inquiry without perjorative connotations. The court expects from counsel that kind of professionalism, but it also recognizes that defendants are, within that context, entitled to inquire. The motion for a protective order is denied.

Rhodes v. Sun Electric Corp.
Not Reported in F.Supp., 1985 WL 2867 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.